# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROWLAND D. PUGH, | CV F   01 5017 OWW LJO P |
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATIONS REGARDING MOTION FOR SUMMARY JUDGMENT (Doc. 86) |
| CAL TERHUNE, et. al., | |
| Defendants. | |

Rowland D. Pugh ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action filed pursuant to 42 U.S.C. § 1983.

**A. RELEVANT PROCEDURAL HISTORY**

Plaintiff filed the instant action on January 4, 2001, alleging cruel and unusual punishment in violation of the Eighth Amendment. On June 8, 2001, the Court issued an Order finding that the Complaint stated a cognizable claim for relief against Defendants Wooded, Ursenbach, Murch, Ortiz, Berbereia, Marmolejo and Flores but not for the remaining forty (40) Defendants. The Court dismissed the complaint as to the remaining Defendants and granted Plaintiff thirty days in which to amend. On July 18, 2001, Plaintiff notified the Court that he wished to proceed against the above Defendants only and dismiss the complaint as to the

remaining Defendants. On July 31, 2001, the Court issued Findings and Recommendations that all but the above named Defendants be dismissed from the action. The Court also issued an Order directing Plaintiff to complete the required forms for service of the Complaint on the Defendants. The District Court adopted the Findings and Recommendations on November 5, 2001.

On June 28, 2002, Defendants filed a preanswer Motion to Dismiss. The Court recommended the Motion be denied on November 8, 2002, and the District Court adopted the recommendation on January 7, 2003. Defendants filed an Answer on October 4, 2004. A Discovery and Scheduling Order issued on October 20, 2004.

On September 2, 2005, Defendants filed a Motion for Summary Judgment, Memorandum/Response in Support of Motion for Summary Judgment, and a Statement of Undisputed Facts. (Docs. 86, 87, 88.) Plaintiff filed an Opposition to the Motion on October 14, 2005. A Reply to the Opposition was filed on November 4, 2005.

**B. SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Under summary judgment practice, the moving party

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a Summary Judgment Motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a

1  circumstance, summary judgment should be granted, "so long as whatever is before the district
2  court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is
3  satisfied." Id. at 323.

4      If the moving party meets its initial responsibility, the burden then shifts to the opposing
5  party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec.
6  Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

7      In attempting to establish the existence of this factual dispute, the opposing party may not
8  rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the
9  form of affidavits, and/or admissible discovery material, in support of its contention that the
10  dispute exists. Rule 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must
11  demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the
12  suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W.
13  Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that
14  the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for
15  the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

16      In the endeavor to establish the existence of a factual dispute, the opposing party need not
17  establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual
18  dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at
19  trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce
20  the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"
21  Matsushita, 475 U.S. at 587 (*quoting* Fed. R. Civ. P. 56(e) advisory committee's note on 1963
22  amendments).

23      In resolving the Motion for Summary Judgment, the Court examines the pleadings,
24  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if
25  any. Rule 56(c). The evidence of the opposing party is to be believed, Anderson, 477 U.S. at
26  255, and all reasonable inferences that may be drawn from the facts placed before the court must
27  be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (*citing* United States v.
28  Diebold, Inc., 369 U.S. 654, 655 (1962)(*per curiam*). Nevertheless, inferences are not drawn out

of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (*citation omitted*).

**C. UNDISPUTED FACTS**[1]

1. On June 18, 1999, Plaintiff was serving a term in Administrative Segregation ("Ad Seg") at the California Substance Abuse and Treatment Facility ("CSATF") for an altercation with another inmate. (Exh. 2, 19:10-20:17.)

2. Sometime in the afternoon of June 18th, a black inmate in Ad Seg had his hand shut in the door by an officer. (Exh. 2, 22:15-24:6.)

3. Shortly thereafter, twelve black inmates in Ad Seg, including Plaintiff, agreed to and created a disturbance to protest the officer's actions. (Exh. 2, 24:7-20, 25:2-26:4, 40:9-19.)

4. The inmates, including Plaintiff, proceeded to cover up their cell windows with paper in violation of prison policy. (Exh. 2, 26:8-27:1-13, 29:14-16, 29:24-30:16; Exh. 3, at 2; Exh. 5 at ¶ 4.)

5. The covered windows interfered with the institutional count performed by watch officers on every watch, a violation which Plaintiff was fully aware of. (Exh. 2, 26:8-25, 27:1-13, 28:2-29:23, Exh.3, 1.)

---

[1] Plaintiff neither admitted or denied the facts set forth by Defendants as undisputed nor filed a separate Statement of Disputed facts. Local Rule 56-260(b). Therefore, the Court compiled the instant Statement of Undisputed Facts from Defendants' Statement of Undisputed Facts and Plaintiff's verified Complaint and Opposition. Johnson v. Meltzer, 134 F.3d 1393, 1399-1400 (9th Cir. 1998) (verified Complaints and Oppositions constitute opposing affidavits for purposes of the summary judgment rule if they are based on facts within the pleader's personal knowledge). Because Plaintiff did not submit his own Statement of Disputed facts or address Defendants' Statement of Undisputed Facts, the Court accepts Defendants' version of the facts where Plaintiff's verified Complaint and Opposition are not contradictory. The following facts are undisputed for the purpose of this Motion.

6. Plaintiff knew that officers would respond to inmates covering up their windows by extracting them from their cells. (Exh. 2, 30:4-16, 31:1-6, 31:7-12, 32:13-15, Exh. 3, 2.)

7. Plaintiff was aware that the normal procedure for a cell extraction involved the use of restraints on the wrists and ankles and the use of pepper spray. (Exh. 2, 36:23-38; 38:9-10; Exh. 3, 2.)

8. Plaintiff also knew that if he came out peacefully, he would only be handcuffed. (Exh. 2, 37:21-23.)

9. The extractions of inmates began at approximately 2:30 a.m. on June 19th and cells were entered one by one throughout the night and into the morning. (Exh. 3, 3-9.)

10. Plaintiff was extracted from his cell on the second floor at approximately 6:11 a.m. on June 19th. (Exh. 1; Exh. 2, 40:20-25 to 41:1-3Exh. 3, 6.)

11. Plaintiff was the fifth of eight cells that were extracted. (Exh. 3, 6.)

12. The extraction team assigned to Plaintiff's cell included Defendants Woodend, Team Leader, Murch, shield man, Ursenbach, leg irons; Berbereia, baton/support, Ortiz, cuffs, and Marmolejo, support. The team also included three officers assigned to OC pepper spray that are not named as Defendants in this action. (Exh. 1, Exh. 3, 6.)

13. Plaintiff was asked to come out of his cell and was advised that OC pepper spray was going to be used. Plaintiff refused to come out of his cell. (Exh. 1, Exh. 2, 45:24-46:12, 47:8-12, Exh. 3, 2-3.)

14. After an OC cannister was dropped into Plaintiff's cell through his food port, Plaintiff was given one more chance to exit peacefully but again refused. (Exh. 1, Exh. 3, 6.)

15. The extraction team got into formation outside Plaintiff's cell door and then opened it. (Exh. 1.)

16. Plaintiff came out aggressively, lunging toward officers. (Exh. 1, Exh. 2, 50:2-16, Exh. 5, ¶ 6.)

17. Plaintiff was pushed back into his cell where he continued to resist. (Exh. 1, Exh. 2,

5

50:17-20.)

18. Eventually, Plaintiff was removed from his cell, placed in a prone position and mechanical restraints were placed on his wrists and ankles. (Exh. 1, Exh. 2, 52:24-53:8, Complaint at 10.).)

19. Plaintiff was then lifted up and walked under escort to the stairway, down the stairs and to the showers for decontamination. (Exh. 1, Exh. 2, 52:24-53:8, 55-11-56:3.)

20. The distance between his cell and the showers was 30 or 40 feet. (Exh. 2, 107:21-108:14.)

21. As Plaintiff came out of the showers, he protested that the ankle cuffs were "too tight around my ankles, I can't walk." (Exh. 1; Exh. 2, 55:20-25, Complaint at 10-11.)

22. Three members of the extraction team then picked up Plaintiff and carried him to the holding cell. (Exh. 1; Exh. 2, 56:1-3, 19-57:1, Complaint at 11.)

23. Plaintiff alleges that the distance was another 150 feet but reduces this distance to 40-50 feet at his deposition. (Exh. 2, 58:2-4, 107:21-108:14.)

24. While in the holding cell, Plaintiff was visited by a Medical Technical Assistant ("MTA") at approximately 6:30 a.m., who later that day produced a report. (Exh. 1; Exh. 2, 59:3-15; Exh. 4.)

25. Plaintiff reported to the MTA that the injuries he received during the extraction consisted of one-inch abrasion to his right elbow and an abrasion to his right center knuckle. (Exh. 1; Exh. 2, 59:18-22; Ex. 4.)

26. Lt. Cole's report (Exh. 3, 6.) noted that the skin on Plaintiff's left hip was broken, although the videotape reflects that it was actually Plaintiff's left shoulder. (Exh. 1.)

27. The MTA's report states that no other injuries were noted and that Plaintiff had no other complaints. (Exh. 2, 59:18-21, 60:18-20, 69:6-10, 69-70:1-15; Exh. 4.)

28. Plaintiff was fed breakfast and received a bag lunch while in the holding cell. (Exh. 2, 63:13-64:3.)

29. Plaintiff's wrist restraints were removed so that he could eat. (Exh. 2, 63:13-64:17.)

30. At some point after the extractions had ended and the cells were decontaminated,

6

Plaintiff was brought back to his cell. (Exh. 2, 66:1-13.)

31. Plaintiff does not recall when his ankle cuffs were taken off. (Exh. 2, 63:13-64:17.)

32. Plaintiff walked back to his cell under escort by officers. (Exh. 2, 66:1-13.)

33. Plaintiff does not remember going to the medical clinic after this incident. (Exh. 2, 68:17-69-20.)

34. None of the injuries Plaintiff sustained continue today. (Exh. 2, 70: 14-15, 19-21.)

35. Plaintiff is not complaining about the fact he was extracted from his cell, or the alleged "hitting" by officers.

36. Plaintiff is not complaining about the fact that he was place din a prone position and that mechanical restraints were used. (Exh. 2, 78:24–80:6.)

37. Plaintiff is not complaining about officer's having picked him up and carried him to the holding cell when he complained he could not walk. (Exh. 2, 90:11-19.)

38. Plaintiff *does* complain about the use of mechanical restraints after the officers achieved their goal of extracting him from the cell. (Exh. 2, 78:8-80:6, 91:13-92:4.)

39. Plaintiff also complains that the use of restraints constitutes "punishment." (Exh. 2, 78:24-80:6.)

**D. ANALYSIS**

  *1. Summary of Complaint*

In his Complaint, Plaintiff alleges that on June 19, 1999, Defendants Woodend, Ursenbach, Murch, Ortiz, Berbereia and Marmolejo extracted him from his cell while he was in a prone position and not resisting or being combative. Plaintiff alleges that Defendant Ursenbach placed mechanical restraints on his ankles and wrists and then stood him up and forced him to limp 30-50 feet to a shower to decontaminate him from the pepper spray that was used to immobilize him. Plaintiff alleges that he told Defendants Woodend, Ursenbach, Murch, Ortiz, Berbereia and Marmolejo that the mechanical restraints on his ankles were too tight and that he could not walk freely. Plaintiff states that the Defendants did nothing to stop the "cruel and unusual punishment."

Plaintiff further alleges that after he was decontaminated, the excruciating pain and

discomfort caused by the mechanical restraints prevented him from limping any further. Plaintiff states that he begged Defendant Flores to tell Defendants Woodend, Ursenbach, Murch, Ortiz, Berbereia and Marmolejo to loosen the mechanical restraints so he could walk freely to the holding cage. Plaintiff indicates that Defendant Flores ordered the other Defendants to carry him to the holding cage. Plaintiff states that the mechanical restraints were left on for four (4) more hours and that none of the Defendants present did anything to stop the cruel and unusual punishment.

### 2. Claim for Relief

When a prison security measure is undertaken in response to a incident such as occurred in this case, the question of whether the measures taken inflicted unnecessary and wanton pain and suffering depends on "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Hudson v. McMillian, 503 U.S. 1, 4, 5-7, 112 S.Ct. 995, 999 (1992). Factors relevant to the analysis are the need for the application of force, the relationship between the need and the amount of force that was used and the extent of the injury inflicted. Whitley v. Albers, 475 U.S. 312, 106 S.Ct. 1078 (1986). Other factors to be considered are the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them, and any efforts made to temper the severity of a forceful response. Id., at 321. The infliction of pain in the course of a prison security measure "does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied was unreasonable, and hence unnecessary." Whitley v. Albers, *supra* at 319; see also, Hudson v. McMillian, 503 U.S. 1, 112 S.Ct. 995 (1992). Prison administrators "should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Id. at 321-322 (*quoting* Bell v. Wolfish, 441 U.S. 520, 547, 99 S.Ct. 1861 (1970).

Plaintiff alleges that Defendants imposed cruel and unusual punishment on him when they secured his leg restraints tightly following his cell extraction. While Plaintiff alleges that as

a result of the actions of Defendants he suffered pain, it is undisputed that Plaintiff received no serious injuries caused by the actions of Defendants. (UF #34.)

It is undisputed that Plaintiff participated in a prison disturbance that involved the inmates covering up cell windows and refusing to come out of their cells peacefully in protest of an injury received by another inmate earlier that day. (UF # 3, 4.) It is further undisputed that Plaintiff was fully aware that his doing so was not only a violation, but would also interfere with the institutional count and cause prison officers to begin to extract inmates from their cells. (UF # 5, 6.) Defendants present evidence that Plaintiff was asked repeatedly to comply with prison officials orders to peacefully exit his cell but refused to, even in the face of the administration of OC pepper spray. (UF # 13, 14.) The evidence presented further shows that when Plaintiff's cell door was opened, Plaintiff lunged at officers causing them to physically restrain him and place mechanical restraints on his person. (Exh. 1, Motion for Summary Judgment ("Motion"); UF #16.)

On the day in question, a total of twelve inmates were extracted from eight cells, Plaintiff's being the sixth cell to undergo extraction. (UF #11.) Numerous Defendants resisted the extraction injuring a total of sixteen staff members, twelve of them incurred injuries prior to the extraction of Plaintiff from his cell. (Exh. 3, Motion.) According to the evidence provided by Defendants, one guard was head-butted by an inmate during an extraction, another broke free from the extraction team and ran to the common area where he punched a guard, knocking him to the ground. (Exh. 5, at 2.) In addition to these incidents, one guard received a bite to his forearm and another a scratch to his face. (Exh. 3 at 5.)

The Court finds that defendants have met their initial burden of informing the court of the basis for their Motion, and identifying those portions of the record which they believe demonstrate the absence of a genuine issue of material fact. The burden therefore shifts to Plaintiff to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). As stated above, in attempting to establish the existence of this factual dispute, Plaintiff may not rely upon the mere allegations or denials of his pleadings, but is required to tender evidence of specific facts in

9

the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  Rule 56(e); Matsushita, 475 U.S. at 586 n.11; First Nat'l Bank, 391 U.S. at 289; Strong v. France, 474 F.2d 747, 749 (9th Cir. 1973).

In his Opposition, Plaintiff states that he informed Defendants that the mechanical restraints were too tight and that he could not walk.  (Opposition at 2.)  Plaintiff further states he was forced to limp "300 feet" to the showers in pain and discomfort.  Id.  However, this latter statement is in direct contradiction to the undisputed fact and admission by Plaintiff at his deposition that the distance was really only 30 to 40 feet. (UF # 19, 20.)

Other than his repeated assertion that the mechanical restraints were too tight, Plaintiff points to no evidence of facts demonstrating that the placement of mechanical restraints on him was not in a good faith effort to maintain or restore discipline or that it was done for the very purpose of causing harm.  Hudson v. McMillian, 503 U.S. 1, 4, 5-7, 112 S.Ct. 995, 999 (1992). The evidence in the record is clear that Plaintiff voluntarily participated in a prison disturbance that risked the safety and security of the institution.  (UF #s 4, 5, 6, 7.)  In fact, the facts are undisputed that Plaintiff was fully aware that such a protest by inmates would cause cell extractions and would result in the use of mechanical restraints.  (UF # 36.)  It is further undisputed that when Plaintiff finally did come out of the cell, he lunged at officers, further causing officers to respond with sufficient force to restrain Plaintiff and thereby restore and maintain order.  (UF #16.)  When Plaintiff complained about the restraints being too tight, Officers carried him to the holding cell.  (UF #22.)  This belies Plaintiff's very claim that the officers purpose in placing the restraints on him in a tight manner was for the sole purpose of causing him harm.  Finally, Plaintiff presents no evidence of injury.  Plaintiff's complaint is simply that during the course of the extraction from his cell, a result of his own defiant actions, the ankle restraints used to restore and maintain discipline cause him temporary pain and discomfort.  "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights."  Hudson v. McMillian, 112 S.Ct. 995, 1000 (1992) (citing Johnson v. Glick, 481 U.S. 1033 (1973))  Plaintiff has failed to raise a reliable inference that prison officials wantonly inflicted pain on him; therefore, the Court finds

10

that Defendants are entitled to summary judgment.  See, Whitley v. Albers, 475 U.S. 312, 322 (1986.)

**E. CONCLUSION AND RECOMMENDATION**

The Court RECOMMENDS that the Motion for Summary Judgment be GRANTED and the action DISMISSED.

The Court further ORDERS that these Findings and Recommendations be submitted to the United States District Court Judge assigned to this action pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within THIRTY (30) days after being served with a copy of these Findings and Recommendations, any party may file written Objections with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Replies to the Objections shall be served and filed within TEN (10) court days (plus three days if served by mail) after service of the Objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file Objections within the specified time may waive the right to appeal the Order of the District Court.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   December 15, 2005**            **/s/ Lawrence J. O'Neill**
b9ed48                                    UNITED STATES MAGISTRATE JUDGE